ORIGINAL

AO 241 (Rev. 12/04)

- 08 - 051



**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| United States District Court | District: of Delaware |
|---|---|
| Name (under which you were convicted): Donnie R. Hawkins | Docket or Case No.: |
| Place of Confinement: Delaware Correctional Center Smyrna, Delaware 19977 | Prisoner No.: #00095039 |

Petitioner (include the name under which you were convicted): Donnie R. Hawkins

v.

Respondent (authorized person having custody of petitioner): Perry Phelps

The Attorney General of the State of Joseph F. Biden III

FILED

JAN 24 2008

U.S. DISTRICT COURT DISTRICT OF DELAWARE

BD scanned

IFP

**PETITION**

1. (a) Name and location of court that entered the judgment of conviction you are challenging: Superior Court of Delaware in and for Sussex County 1 The Circle, Suite 2 Georgetown, Delaware 19947

   (b) Criminal docket or case number (if you know): C.R.A. No. #0411002216

2. (a) Date of the judgment of conviction (if you know): April 19, 2005

   (b) Date of sentencing: June 7, 2005

3. Length of sentence: Fourty four years and 1 month at Level V.

4. In this case, were you convicted on more than one count or of more than one crime? ☒ Yes ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case: Possession of a Deadly Weapon During the Commission of a Felony (2 count), Unlawful Imprisonment (Second Degree), Endangering the Welfare of a Child, Aggravated Menacing, Offensive Touching, Assault (Third Degree), Driving After Judgment Prohibited, and Driving Under the Influence of Alcohol.

6. (a) What was your plea? (Check one)

   ☒ (1) Not guilty ☐ (3) Nolo contendere (no contest)

   ☐ (2) Guilty ☐ (4) Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

☒ Jury ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☒ Yes ☐ No

8. Did you appeal from the judgment of conviction?

☒ Yes ☐ No

9. If you did appeal, answer the following:

(a) Name of court: Supreme Court of the State of Delaware

(b) Docket or case number (if you know): No. 257, 2005

(c) Result: Affirmed

(d) Date of result (if you know): July 11, 2006

(e) Citation to the case (if you know): N/A 905 A.2d 747, 2006 WL 1932668 (Del. 2006) (table)

(f) Grounds raised: 1. Superior Court erred in admitting alleged prior misconduct into evidence as state's case-in-chief and 2. Superior Court erred when it denied defense opportunity to cross examine his wife about unrelated shooting incident thirteen years earlier.

(g) Did you seek further review by a higher state court? ☐ Yes ☒ No

If yes, answer the following:

(1) Name of court: ____________

(2) Docket or case number (if you know): ____________

(3) Result: ____________

(4) Date of result (if you know): ____________

(5) Citation to the case (if you know): ______

(6) Grounds raised: ______

(h) Did you file a petition for certiorari in the United States Supreme Court? ☐ Yes ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): ______

(2) Result: ______

(3) Date of result (if you know): ______

(4) Citation to the case (if you know): ______

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court? ☒ Yes ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: Superior Court of the State of Delaware

(2) Docket or case number (if you know): I.D.#0411002216A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: Post-Conviction, Superior Ct. Crim. Rule 61(i)(5)

(5) Grounds raised: 1. Ineffective Assistance of Counsel; 2. Violation of due process for counsel failure to subpoena witnesses; 3. Contaminated crime scene; and 4. Police had failed to secure evidence.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☒ No

(7) Result: ______

(8) Date of result (if you know): August 6, 2007

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: ______

(2) Docket or case number (if you know): ______

(3) Date of filing (if you know): ______

(4) Nature of the proceeding: ______

(5) Grounds raised: ______

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☒ No

(7) Result: ______

(8) Date of result (if you know): ______

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: ______

(2) Docket or case number (if you know): ______

(3) Date of filing (if you know): ______

(4) Nature of the proceeding: ______

(5) Grounds raised: ______

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☒ No

(7) Result: ______________________

(8) Date of result (if you know): ______________________

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition: ☒ Yes ☐ No

(2) Second petition: ☒ Yes ☐ No

(3) Third petition: ☐ Yes ☒ None

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial Counsel was ineffective by failing to conduct any reasonable investigation in determining what evidence the state had or wished to present and failing to make reasonable pre-trial motion filings.

(b) If you did not exhaust your state remedies on Ground One, explain why:

Attempt was made on post-conviction appeal, state highest court rejected to hear argument under both State and Federal Constitutional violations.

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes ☒ No

(2) If you did not raise this issue in your direct appeal, explain why:

Appeal Counsel waiver.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Post Conviction Appeal

Name and location of the court where the motion or petition was filed:
Supreme Court of Delaware
55 The Green
Dover, Delaware 19903

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available): Affirmed

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☒ No

(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☒ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: ____________________

Docket or case number (if you know): ____________________

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available): ____________________

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

____________________

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: NONE

**GROUND TWO:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Ineffective Assistance of Counsel, failing to communicate all legal pleadings and other area's of law with her client to provide sufficient informative information for trial.

(b) If you did not exhaust your state remedies on Ground Two, explain why: Same as ground one.

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:

Appeal Counsel waiver

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state: Same as ground one.

Type of motion or petition: Appeal

Name and location of the court where the motion or petition was filed: ____________________

Docket or case number (if you know): ____________________

Date of the court's decision: ____________________

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☑ No

(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☐ Yes ☑ No

(6) If your answer to Question (d)(4) is "Yes," state: ______

Name and location of the court where the appeal was filed: ______

Docket or case number (if you know): ______

Date of the court's decision: ______

Result (attach a copy of the court's opinion or order, if available): ______

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

______

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two ______

**GROUND THREE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Ineffective Assistance of Counsel failing to object to inadmissible testimony of police.

(b) If you did not exhaust your state remedies on Ground Three, explain why? Same as ground one.

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:

Appeal Counsel Waiver

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Appeal

Name and location of the court where the motion or petition was filed: ______

Docket or case number (if you know): ______

Date of the court's decision: ______

Result (attach a copy of the court's opinion or order, if available): ______

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☑ No

(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☐ Yes ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: ______

Docket or case number (if you know): ______

Date of the court's decision: ______

Result (attach a copy of the court's opinion or order, if available): ______

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ❐ Yes ❐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❐ Yes ❐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

______________________________

Docket or case number (if you know): ______________________________

Date of the court's decision: ______________________________

Result (attach a copy of the court's opinion or order, if available): ______________________________

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☑ No

(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☐ Yes ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: ______________________________

Docket or case number (if you know): ______________________________

Date of the court's decision: ______________________________

Result (attach a copy of the court's opinion or order, if available): ______________________________

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

______________________________

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: ______________________________

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? ☑ Yes ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, ground or grounds have not been presented, and state your reasons for not presenting them: NO

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? ☐ Yes ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. Attached

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging? ☐ Yes ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the raised. ______________________________

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: Carole J. Dunn, Esquire Assistant Defender, 14 The Circle 2nd Floor Georgetown, Delaware 19947

(b) At arraignment and plea: Same

(c) At trial: Same

(d) At sentencing: Same

(e) On appeal: Same

(f) In any post-conviction proceeding: Pro Se

(g) On appeal from any ruling against you in a post-conviction proceeding: Pro Se

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? ☐ Yes ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: ______

(b) Give the date the other sentence was imposed: ______

(c) Give the length of the other sentence: ______

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future? ☐ Yes ☑ No

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

or any other relief to which petitioner may be entitled.

_______________________________

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on 1-21-08 (month, date, year).

Executed (signed) on January 21, 2008 (date).

Donnie Ray Hawkins
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

IN FORMA PAUPERIS DECLARATION

_______________________________

[insert appropriate court]

* * * * *

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DONNIE RAY HAWKINS, | § | |
| | § | No. 257, 2005 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court of the |
| | § | State of Delaware in and for |
| v. | § | Sussex County |
| | § | |
| STATE OF DELAWARE, | § | No. 0411002216A |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: March 29, 2006
Decided: July 11, 2006

Before **STEELE**, Chief Justice, **HOLLAND**, **BERGER**, **JACOBS**, and **RIDGELY**, Justices, constituting the Court *en Banc*.

**ORDER**

This 11th day of July 2006, it appears to the Court that:

1) Defendant-Appellant, Donnie R. Hawkins challenges his convictions for alleged offenses against his wife and eight-year old stepdaughter.[1] Hawkins claims the Superior Court erred (1) when it admitted alleged prior misconduct

[1] Defendant was convicted of: Possession of a deadly weapon during the commission of a felony (2 counts), in violation of 11 Del. C. § 1447; aggravated menacing (2 counts), in violation of 11 Del. C. § 602(b); driving under the influence of alcohol, in violation of 21 Del. C. § 4177(a); unlawful imprisonment second degree (2 counts), in violation of 11 Del. C. § 781; assault third degree, in violation of 11 Del. C. § 611(1); disorderly conduct, in violation of 11 Del. C. § 1301(1)(a); endangering the welfare of a child, in violation of 11 Del. C. § 1102(a)(4); driving after judgment prohibited, in violation of 21 Del. C. § 2810; and offensive touching (2 counts), in violation of 11 Del. C. § 601.

Ex A

evidence into the State's case-in-chief and (2) when it denied him the opportunity to cross-examine his wife about a non-related shooting incident that occurred thirteen years previously. We find no reversible error and affirm.

2) On November 3, 2004, Hawkins cursed at his wife, Carol Hawkins, ("Carol"), and hit her. At approximately 2:00 p.m. that day, Hawkins got out his pocketknife and held it to her, saying he was going to kill her and that she would not live through the day. Carol's daughter, Becky, returned home from school at approximately 3:30 p.m. to find her mother crying. Her mother told her not to talk to Hawkins and to run when she had the chance, but Becky refused to leave. Becky later explained that Hawkins was drunk and "acting mean."

3) At approximately 6:10 p.m. Matthew Collins and Joe Littleton stopped at the home to ask about a car advertised for sale in front of it. Collins testified that he and Littleton entered the house after either Hawkins or Carol invited them in. When Hawkins turned his back to them, Carol and Becky screamed, "He has a knife. He is trying to kill us." Collins saw Hawkins make "a swinging motion to frighten them back," but did not see a knife. Collins testified that Hawkins then told them to "Get the fuck out!" to which Becky replied, "Don't leave us!" The two men left the home and called 911. As they were leaving, they saw Hawkins pulling Carol out of the house by her hair. Becky testified that before going out to the car, Hawkins threw Carol on the ground, punched her and

kicked her. Hawkins then put his wife and stepdaughter in his truck and drove away.

4) After the 911 call, the Delaware State Police intercepted Hawkins, Carol and Becky and arrested Hawkins. Trooper Justin Galloway testified at trial that Carol's lip was "busted open" and she was covered with scratches and defensive marks. "[Hawkins] grabbed her so hard that you could see the imprint of a human hand on her arm and already caused bruising from where he had been grabbing her, tugging on her." A blood alcohol test of Hawkins returned a reading of 0.190. Trooper Galloway explained that he searched Hawkins at the traffic scene but found no weapon. When Trooper Galloway returned to the Hawkins' residence there appeared to be a blood-like substance on the kitchen floor and it also appeared that someone had fallen. Trooper Aaron C. Blair testified that it was apparent that there had been a fight in the home. At the residence, Becky gave the State Police the knife Hawkins used.

5) At trial, Carol also testified that she left Hawkins in early 2004 because he had routinely beaten her and drank alcohol. Counsel for Hawkins objected to this testimony of prior bad acts because it would be "extremely prejudicial." The Superior Court then conducted a *Getz* analysis.[2] The prosecutor offered two explanations to satisfy *Getz* and admit the evidence of prior bad acts.

---

[2] *See Getz v. State*, 538 A.2d. 726 (Del. 1988).

First, the prosecutor explained "for the jury to have any understanding why he would have gone to the extreme that he did, I have to lay some background that this wasn't unusual, that he had often been very bad, but I don't think he had ever been this bad." Second, the prosecutor explained the evidence would show why Carol never reported the abuse to the police: "he told her if she ever got him arrested, he would find her and he would kill her." Defense counsel responded that:

> it's not necessary to show motivation. He's on trial on the issues of did this happen or did it not happen. They have eyewitnesses to certain conduct, certain events.... The State is using this information to show that he's a mean drunk, ... he did it on this date in question because he done [sic] it in the past.

6) After applying *Getz*, the Superior Court limited the timeframe of the evidence of prior alleged misconduct, but admitted the evidence for the purpose of explaining the relationship between the parties and Hawkins' motivation to beat his wife. The trial judge said: "I think [the prior bad acts evidence] puts the relationship between the partiers in a more meaningful and understandable context certainly for the jury. So I think it is something that is material." Under the second *Getz* prong, the Court ruled that "motive" is a "sanctioned purpose," and the prior bad acts showed that in the past, Hawkins' motive to beat his wife had been "little things." Under the third *Getz* prong, the Court ruled that the prior bad acts were supported by plain, clear, and conclusive evidence. Under the fourth

*Getz* prong, the Court ruled that uncharged acts within six months of the charged acts are not too remote in time. Finally, the Court balanced "the probative value … against the unfairly prejudicial effect, and … look[ed] at nine factors," concluding that the probative value outweighed the prejudice.

7) After the ruling allowing prior bad acts evidence, Carol testified before the jury in more detail. She said that during the spring of 2004 Hawkins drank heavily and "come, smack me around, say the house wasn't clean enough, and call me names in front of my daughters;" she said Hawkins called her daughters names, hit her, and tried to run her over with his car. Becky also testified about the incidents occurring in spring 2004 while she lived with her mother and Hawkins.

The Superior Court gave the following limiting instruction to the jury:

> Ladies and gentlemen of the jury, you have heard testimony about matters that allegedly upset the defendant. You have also heard testimony about the defendant's alleged drinking and alleged abusive behavior towards Carol Hawkins and others. These are matters that allegedly happened sometime before November 3, 2004. You must not use such evidence as proof that the defendant is a bad person, and, therefore, probably committed the offenses with which he is charged.
>
> You must not consider such evidence to conclude that the defendant has a certain character or a certain character trait, and to further conclude that he acted in conformity to the trait or character with respect to the offenses charged in this case.
>
> Such evidence about prior conduct before November 3, 2004 was offered by the State for the purpose of explaining the relationship between the defendant and Carol Hawkins, and for showing any

motive on the part of the defendant to commit the alleged offenses. You must consider this evidence only for the purposes I just mentioned. You assign to it such weight as you determine it deserves.

And again, I am talking about things that allegedly happened prior to November 3, 2004. The events of that day are treated differently and they allegedly form the basis of the charges in the indictment.

8) Hawkins testified in his own defense. He said he did not have a knife on November 3, 2004, did not intend to terrorize his wife and 8-year-old stepdaughter, did not force them to stay in their house, did not swing anything at his wife and stepdaughter, did not hit or kick his wife, and did not drag his wife out to the truck by her hair. In short, he denied that the alleged offenses ever happened.

9) Hawkins' first claim is that under Delaware Rule of Evidence 404(b), the Superior Court abused its discretion when it admitted the prior misconduct evidence.[3] Specifically, Defendant contends that his wife's testimony of alleged misconduct in the spring of 2004 was not material to any issue in dispute and was unduly prejudicial.

10) D.R.E. 404(b) does not permit evidence of prior misconduct to "support a general inference of bad character." However, the Rule states evidence

---

[3] Del. R. Evid. 404(b).

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident," or for another purpose other than to prove character, so long as the *Getz* test is satisfied.[4] The analysis set forth by this Court in *Getz* requires that the evidence of prior misconduct:

(1) be material to an issue or ultimate fact in dispute in the case (if the state elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue);
(2) be introduced for purposes sanctioned by D.R.E. 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition;
(3) be proved by plain, clear and conclusive evidence;
(4) not be too remote from the charged offense; and
(5) the court must balance the probative value against its unfairly prejudicial effect, as required by D.R.E. 403.[5]

Once the Court decides this evidence is admissible, the Court must instruct the jury concerning the limited purpose for its admission.[6]

11) This Court recently reiterated in *Barnett v. State* that bad act evidence must be relevant to an issue in dispute in the present case.[7] Here, defendant contends that his motive was not an issue that arose in the State's case-in-chief, and the State was not required to prove Defendant's motive. This was not a case where Hawkins conceded his action, but attempted to explain it with a benign

---

[4] 538 A.2d at 734.
[5] *Id.* (emphasis added).
[6] *Id.* (emphasis added).
[7] 893 A.2d 556 (Del., Feb. 9, 2006) (citing *Getz v. State*, 538 A.2d. 726 (Del. 1988)).

motive.[8] Here, Hawkins claimed that the charged acts on November 3, 2004 did not happen. His motive was not in dispute and even if it was, his prior bad acts did not show a motive for his conduct on November 3, 2004. We conclude that the admission of the other crimes evidence was an abuse of discretion.[9]

12) Although the Superior Court's admission of prior misconduct was an abuse of discretion, a reversal is not required when the error is harmless beyond a reasonable doubt.[10] Here, the testimony of the eyewitnesses and the responding police officers overwhelmingly corroborated the testimony of Carol. This was not a close case, as in *Barnett.*[11] We are satisfied that the Superior Court's error in admitting the evidence of prior misconduct was harmless beyond a reasonable doubt.

13) Defendant's second claim is that the Superior Court erred when it denied his motion to cross examine the complaining witness about a prior unrelated incident in which she shot and killed a man in a domestic dispute. Thirteen years before trial, Carol shot and killed the father of her fourteen-year-old daughter, but was exonerated based upon self-defense. Hawkins contends that

---

[8] *See, e.g., Vanderhoff v. State*, 684 A.2d 1232 (Del. 1996) (defendant used a flashlight to view a child's vaginal area, but contended his motive was not sexual).

[9] *See Barnett*, 893 A.2d at 559.

[10] *Barnett v. State*, 893 A.2d 556, 559 (Del. 2006) (quoting *Van Arsdall v. State*, 524 A.2d 3, 25 (Del. 1987)).

[11] 893 A.2d 556.

Carol's specific act was relevant to her credibility. The Superior Court ruled that the evidence was not relevant.

14) Delaware Rule of Evidence 608(b) generally prohibits the use of specific instances of conduct for the purpose of attacking a witness' credibility other than conviction of a crime as provided in Rule 609.[12] The evidence proffered was in clear violation of DRE 608(b). We find no merit to this claim.

NOW THEREFORE, IT IS ORDERED THAT the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

Justice

[12] Del. R. Evid. 608(b). Specific instances of conduct.

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. (emphasis added)

3

SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY
JUDGE

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5256

August 6, 2007

Donnie R. Hawkins
SBI # 00095039
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

Carole J. Dunn, Esquire
Assistant Public Defender
Public Defender of the State of Delaware
14 The Circle
Georgetown, DE 19947

Melanie C. Withers, Esquire
Deputy Attorney General
Delaware Department of Justice
114 E. Market Street
Georgetown, DE 19947

**RE: State of Delaware v. Donnie R. Hawkins**
**Def. ID# 0411002216A**
**Memorandum Opinion - Motion for Postconviction Relief**

Dear Counsel and Mr. Hawkins:

This is my decision on Donnie R. Hawkins' ("Hawkins") motion for postconviction relief. Hawkins was found guilty of Possession of a Weapon During the Commission of a Felony (two counts), Aggravated Menacing (two counts), Assault in the Third Degree, Unlawful Imprisonment in the Second Degree (two counts), Endangering the Welfare of a Child, Offensive Touching (two counts), Disorderly Conduct, Driving a Vehicle with a Prohibited Alcohol Content, and Driving after Judgment Prohibited. The Supreme Court affirmed Hawkins' convictions on July 11, 2006.[1]

The convictions arose out of an incident involving Hawkins, his wife, Carol Hawkins ("Carol"), and her nine-year-old daughter, Rebecca Bolen ("Becky") on November 3, 2004. The day

[1] 905 A.2d 747, 2006 WL 1932668 (Del. 2006) (TABLE).

in question started out uneventfully. Becky left for school at approximately 7:30 a.m. Hawkins and Carol, who was recovering from hip surgery, spent the morning driving around looking for a tractor to buy. Hawkins apparently earned money by buying and selling tractors. They found a tractor in Preston, Maryland and purchased it. During their hunt for the tractor, Hawkins drank both liquor and beer. This led to an argument between Hawkins and Carol. When Carol tried to throw the beer out of the pickup window, Hawkins backhanded her in the mouth. Hawkins and Carol got home with the tractor around 2:30 p.m. Once home, Hawkins started calling Carol names. He eventually pulled out a pocketknife, placed it to Carol's throat and threatened to kill her. Becky arrived home at approximately 3:30 p.m. to find her mother crying. The situation calmed down and the three of them went to Greenwood, Delaware to deliver a tractor. On the way home, Hawkins, who continued to drink beer, turned his anger towards Becky, calling her names. They got home around 6:00 p.m. Once home, Hawkins continued to call Carol names and to threaten her and Becky with the knife. Later that evening, Matthew Collins ("Collins") and Joe Littleton ("Littleton") stopped by Hawkins' house to inquire about a car in the yard that was for sale. When Collins and Littleton entered the house, Carol and Becky screamed "He has a knife. He is trying to kill us." Hawkins told Collins and Littleton to leave. They went outside and called 911. While waiting for the police to arrive, Collins saw Hawkins drag Carol from the house by her hair and put her and Becky in the pickup. Collins and Littleton followed Hawkins' pickup and called the police, telling them the direction Hawkins was headed. The police pulled over Hawkins and arrested him.

The State of Delaware (the "State") was represented by Deputy Attorney General Melanie C. Withers, Esquire ("Withers"). Hawkins was represented by Assistant Public Defender Carole J. Dunn, Esquire ("Dunn"). This is Hawkins' first motion for postconviction relief. It was filed in a

timely manner. Hawkins alleges that (1) Dunn was ineffective, (2) his due process rights were violated because Dunn did not subpoena certain witnesses, (3) the police allowed the victims to contaminate the crime scene, and (4) the police did not keep the knife for testing. Dunn and Withers filed affidavits responding to Hawkins' allegations.

## DISCUSSION

### I. Ineffective Assistance of Counsel

Hawkins alleges that Dunn was ineffective because she allegedly failed to (1) effectively cross-examine certain witnesses, (2) subpoena certain witnesses, (3) devise a trial strategy and consult with Hawkins, (4) appeal the issue of the alleged contamination of the crime scene, and (5) attack the police for not collecting evidence. Given the nature of the allegations, there is no reason to hold an evidentiary hearing.

The United States Supreme Court has established the proper inquiry to be made by courts when deciding a motion for postconviction relief.[2] In order to prevail on a claim for ineffective assistance of counsel pursuant to Superior Court Criminal Rule 61, the defendant must engage in a two-part analysis.[3] First, the defendant must show that counsel's performance was deficient and fell below an objective standard of reasonableness.[4] Second, the defendant must show that the deficient performance prejudiced the defense.[5] Further, a defendant "must make and substantiate concrete

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

[3] *Strickland*, 466 U.S. at 687.

[4] *Id.* at 687.

[5] *Id.* at 687.

allegations of actual prejudice or risk summary dismissal."[6] It is also necessary that the defendant "rebut a 'strong presumption' that trial counsel's representation fell within the 'wide range of reasonable professional assistance,' and this Court must eliminate from its consideration the 'distorting effects of hindsight when viewing that representation.'"[7] There is no procedural bar to claims of ineffective assistance of counsel.[8] I have considered Hawkins' allegations and concluded that Dunn's performance was not deficient.

**A. Cross-examination of witnesses**

Hawkins alleges that Dunn failed to successfully cross-examine several witnesses by pointing out inconsistencies in their testimony. I will address each allegation separately.

**i. Becky's testimony about the knife**

Becky testified that Hawkins apologized, gave the knife to her at the house, and that she put the knife away. Hawkins alleges that when he was arrested, Becky told the police that the knife was on the floor at the home. Hawkins alleges that Dunn should have pointed out this inconsistency. Hawkins' allegation is not supported by the evidence. The camera in the police officer's car captured Hawkins' arrest and Becky's statements to the police. The police officer asked Carol and Becky what happened. Becky told the police officer that Hawkins "threatened us with a knife" and that "he tried to kill us." When asked where the knife was, Becky said, it is "at home." The police officer repeated her answer, stating "at home." Becky never said that the knife was on the floor.

---

6 *State v. Coleman*, 2003 WL 22092724 (Del. Super. Feb. 19, 2003).

7 *Coleman*, 2003 WL 22092724, at *2, *quoting Strickland*, 466 U.S. at 689.

8 *Coleman*, 2003 WL 22092724, at *1, *citing State v. Johnson*, 1999 WL 743612, at * 2 (Del. Super. Aug. 12, 1999); *State v. Gattis*, 1995 WL 790961, at * 7 (Del. Super. Dec. 28, 1995), *aff'd*, 637 A.2d 1174 (Del. 1997).

Thus, there was no inconsistency for Dunn to point out.

**ii. Galloway's testimony about the knife**

Officer Justin Galloway testified that he photographed the knife and left it at the house. Hawkins alleges that the police did not leave the knife at the house, but instead took it to the prison and placed it with his personal effects there. I seriously doubt Hawkins' version of the events. It simply would not have made any sense for the police to take the knife to the prison. It seems much more likely that Hawkins, who had a collection of knives, had another knife with him when he was arrested and that it was discovered when he was taken to the prison. In any event, given that the knife in question is unremarkable, it will be impossible to determine whose version is correct. Even assuming that Hawkins is correct, this "inconsistency" does not help him. The State alleged that Hawkins threatened Carol and Becky with a knife. It is undisputed that the police found a knife at the house. Where the knife ended up is irrelevant and does nothing to dispel the allegation that Hawkins had a knife. Moreover, Hawkins never told Dunn about this until the trial was nearly over, leaving her with no opportunity to do anything about it.

**iii. The 911 call**

Collins and Littleton told the 911 operator that Hawkins had a knife. Hawkins alleges that they admitted during their testimony that they never actually saw a knife. Hawkins is correct. Collins and Littleton testified on cross-examination that they did not actually see Hawkins with a knife. They merely concluded this based on the victims' statements and Hawkins' behavior. Dunn brought out this inconsistency on cross-examination. Thus, she effectively placed it before the jury.

**iv. Carol's testimony about the phone**

Carol testified that the Hawkins "ripped the phone out of the wall and all that." She also

testified that when she went home after Hawkins was arrested that the "phone rang as soon as she walked in the door and it was his sister." Hawkins alleges that Dunn should have pointed out this inconsistency. Carol also testified that there were two phones in the house. There was, according to Carol, a phone on the kitchen wall and a cordless phone in the dining room. She also testified that the phone on the kitchen wall was not damaged, just unplugged. Given that there were two phones in the house, it is not clear if there was an inconsistency at all. Carol may have used the cordless phone when she came home. If there was an inconsistency, then Carol explained it away by stating that the phone on the kitchen wall was not damaged, just unplugged.

**v. Blair's testimony about the victims' demeanor**

Officer Aaron Blair testified on cross examination that Carol and Becky were hysterical and crying when Hawkins was arrested and that Becky was yelling "help us, help us, he's trying to kill us." Hawkins alleges that the videotape does not support Blair's testimony. First of all, the jury heard Blair's testimony and watched the video. Thus, it was in a position to decide whether the two were consistent. Second of all, it is not obvious that the video does not support Blair's testimony. When the police stopped Hawkins' pickup, Carol quickly got out of the pickup and told Becky to "Hurry, hurry." Becky then got out of the pickup and she and Carol moved away from it and hugged each other. When Carol and Becky moved away, they moved out of the range of the police officers' microphones. Thus, it is not clear what they were saying. Moreover, they were both obviously scared. After Hawkins was placed in the police car, one of the police officers went over to Carol and Becky and asked them what happened. Becky stated, in a very excited voice, that "he threatened us with a knife" and that "he tried to kill us." I do not believe there was an inconsistency and if there was, then it was minor given how obviously scared Carol and Becky were.

**vi. The removal of the truck**

The police report apparently states that Hawkins' pickup was towed away after he was arrested. This is incorrect. Carol drove the pickup back to the house. Hawkins alleges that Dunn should have pointed out this inconsistency. This inconsistency is irrelevant. Whether the pickup was towed or driven back to the house has nothing at all to do with the charges against Hawkins.

**vii. Bias and prejudice of the witnesses**

Hawkins alleges that Dunn was ineffective because she did not effectively cross examine the witnesses to show their biases and prejudices. The only witnesses who were likely to be prejudiced against Hawkins were his two victims, Carol and Becky. The other witnesses were police officers, Hawkins' relatives and friends, or disinterested parties. Not surprisingly, there was not much for Dunn to do with Becky, a nine-year-old child. Carol presented Dunn with a much greater opportunity for effective cross-examination. Dunn was able to show that Carol was angry with Hawkins for making her go with him to look for a tractor; that Carol had kicked Hawkins in the past when he had hit her; that Carol had started arguments with Hawkins; that Carol was unhappy with Hawkins for staying out all night when he and Carol were supposed to spend the night together; that Carol may have had a new boyfriend; that Carol may have sold Hawkins' personal property after he was arrested; and that Carol used Hawkins' ATM card to get cash to pay for her trip home. In summary, Dunn was able to show that Carol was unhappy with Hawkins and may have wanted to fabricate a story to get him arrested so that she could be free of him. This was Dunn's theory of the case and her cross-examination of Carol supported it.

**B. Witness subpoenas**

Hawkins alleges that Dunn should have subpoenaed his physician and Brenda Bailey,

William Hawkins and Peggy Downes. Brenda Bailey is William Hawkins' girlfriend. William Hawkins and Peggy Downes are Hawkins' brother and sister, respectively. Hawkins is wrong about Peggy Downes. She testified at the trial for approximately 10 minutes on April 18, 2005.

**i. Hawkins' physician**

Hawkins alleges that his physician would have testified that his health was so poor that he could not possibly have committed the crimes. Dunn tried to talk to Hawkins' physician, but he would not talk to her about Hawkins without a signed release. Dunn gave Hawkins a release, but he repeatedly refused to sign it. Thus, the fault for this rests with Hawkins, not Dunn. In any event, it is obvious that Hawkins, irregardless of his medical condition, was physically able to commit these crimes. The two victims in this case were a 40-year-old woman recovering from hip surgery who could, as shown on the videotape, barely walk and a nine-year-old child. Hawkins was, on the day in question, able to load and unload large tractors, backhand Carol in the mouth and, according to an eyewitness, drag Carol out of the house by her hair. Moreover, Hawkins was able to easily control Carol and Becky by threatening them with a knife. Their screams for help when Collins and Littleton came to the house and their behavior after Hawkins was arrested shows that they were scared to death of Hawkins and would do anything to avoid being hurt by him.

**ii. William Hawkins and Brenda Bailey**

William Hawkins and Brenda Bailey did not see Hawkins on November 3, 2004. Thus, they were not witnesses to the events giving rise to the charges against Hawkins. William and Brenda were allegedly familiar with the nature of Hawkins' relationship with Carol. Dunn did not call them to testify about this because, in her view, it focused on an issue that was not likely to be flattering for Hawkins.

**C. Trial strategy**

Hawkins alleges that Dunn did not discuss with him the trial strategy, inconsistencies in the witnesses' testimony and the fact that the knife was at the prison. Dunn states that Hawkins was very active in planning his defense and that their strategy was to convince the jury that Hawkins did not have a knife, that only a minor scuffle occurred between Hawkins and Carol, and that Carol and Becky were not being held against their will. They tried to show that Carol made all this up so that she could get rid of Hawkins, take his money and move away with her new boyfriend. The alleged inconsistencies in the testimony of certain witnesses were, as I concluded earlier, either non-existent or so trivial as to not matter. I also addressed the issue of the knife earlier and concluded that Hawkins' argument made no sense. Moreover, if Hawkins believed that the absence of blood on the knife was helpful to him, then he should have told Dunn about the knife's location so that she could have had it tested.

**D. Appeal**

Hawkins alleges that the police allowed Carol and Becky to contaminate the crime scene by driving the pickup back to the house and then going inside to retrieve the knife for the police. He further alleges that Dunn should have raised this issue on appeal. There is no reason to believe that the victims' actions contaminated the crime scene. The victims merely drove the pickup back to the house and went inside and retrieved the knife for the police. There is no reason to believe that they took or mishandled anything of evidentiary value. Thus, there was no issue for Dunn to appeal.

**E. Physical Evidence**

Hawkins alleges that Dunn should have attacked the police for not gathering blood samples from the floor, checking the crime scene for fingerprints, collecting the victims' clothes, which,

according to Hawkins, should have been covered in blood, and collecting the beer cans and other unidentified physical evidence. Dunn did deal with this during her cross-examination of the police officers. She had Blair and Galloway both admit that they did not keep the knife and fingerprint it. Dunn also had both officers admit that Carol and Becky had no blood on them, except that Carol had a few drops of blood on her collar. It would have been pointless to try to get fingerprints from items in the house because Hawkins and the two victims lived there and their fingerprints would be expected to be on many things in the house. Similarly, it would have been pointless to collect the beer cans because Hawkins admitted that he was drinking beer that day. Hawkins' chief complaint is with the knife and the lack of blood on the victims' clothes, which Dunn capably pointed out through cross-examination.

Hawkins' remaining claims are procedurally barred pursuant to Rule 61(i)(3) unless he is able to show cause for relief from the procedural bar and prejudice as a result of any violation of his rights.[9] However, "this bar to relief does not apply to a colorable claim that there was a miscarriage of justice of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading tot the judgment of conviction."[10] Hawkins can not meet this test.

**II. Due Process**

Hawkins alleges that his due process rights were violated because Dunn did not subpoena certain witnesses. I addressed this allegation previously and concluded that it had no merit.

---

[9] *Outten v. State*, 720 A.2d 547, 556 (Del. 1998).

[10] *Outten*, 720 A.2d at 556 *citing* Super. Ct. Crim. R. 61(i)(5).

**III. The Crime Scene**

Hawkins alleges that Dunn should have filed an appeal regarding the contamination of the crime scene. I addressed this allegation previously and concluded that it had no merit.

**IV. Evidence**

Hawkins alleges that the police should have kept the knife in order for him to perform scientific tests on it. I addressed this issue at trial and concluded that there was no violation of Hawkins' rights. I feel no differently now. Moreover, Hawkins knew that the knife allegedly was at the prison. If he had wanted to have it tested, then he could have done so. He chose not to and now he must live with the consequences of that decision.

**CONCLUSION**

Hawkins' motion for postconviction relief is denied.

IT IS SO ORDERED.

Very truly yours,

E. Scott Bradley

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DONNIE RAY HAWKINS, | § | |
| | § | No. 465, 2007 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | in and for Sussex County |
| STATE OF DELAWARE, | § | Cr. ID No. 0411002216A |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: November 6, 2007
Decided: January 7, 2008

Before **STEELE**, Chief Justice, **HOLLAND** and **RIDGELY**, Justices

**ORDER**

This 7th day of January 2008, upon consideration of the appellant's opening brief and the appellee's motion to affirm pursuant to Supreme Court Rule 25(a), it appears to the Court that:

(1) The defendant-appellant, Donnie Ray Hawkins, filed an appeal from the Superior Court's August 6, 2007 order denying his motion for postconviction relief pursuant to Superior Court Criminal Rule 61. The plaintiff-appellee, the State of Delaware, has moved to affirm the Superior

Court's judgment on the ground that it is manifest on the face of the opening brief that the appeal is without merit.[1] We agree and AFFIRM.

(2) Hawkins was found guilty by a Superior Court jury of two counts of Possession of a Weapon During the Commission of a Felony, two counts of Aggravated Menacing, two counts of Unlawful Imprisonment in the Second Degree, two counts of Offensive Touching, Assault in the Third Degree, Endangering the Welfare of a Child, Disorderly Conduct, Driving Under the Influence of Alcohol, and Driving After Judgment Prohibited. Hawkins' convictions and sentences were affirmed by this Court on direct appeal.[2]

(3) In this appeal, Hawkins claims that his counsel provided ineffective assistance by failing to a) conduct a reasonable investigation; b) file a pretrial motion to dismiss overlapping charges; c) review a videotape of his arrest; d) devise a trial strategy and communicate with him about it; e) attack the police testimony; f) subpoena certain witnesses for trial; g) obtain a continuance so his hospitalized sister could testify; h) object to a pretrial statement by his stepdaughter; i) conduct an adequate cross examination of the witnesses; and j) raise on appeal the failure of the police to preserve evidence.

---

[1] Supr. Ct. R. 25(a).

[2] *Hawkins v. State*, Del. Supr., No. 257, 2006, Ridgely, J. (July 11, 2006).

(4) Hawkins did not raise claims a), b), c), g) or h) in his postconviction motion in the Superior Court. As such, we will not consider those claims in this appeal.[3] Hawkins' additional claims that the trial judge was biased, improperly limited the cross examination of certain witnesses, and improperly commented on the evidence also were not raised in Hawkins' postconviction motion. We, therefore, will not consider those claims in this appeal.[4]

(5) In order to prevail on his remaining claims of ineffective assistance of counsel, Hawkins must demonstrate that his counsel's representation fell below an objective standard of reasonableness and that, but for his counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[5] Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable."[6]

(6) As determined by the Superior Court in its August 6, 2007 decision, Hawkins has failed to demonstrate that any alleged error on the part of his counsel resulted in prejudice to him. As such, we conclude that

---

[3] Supr. Ct. R. 8.
[4] Id.
[5] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).
[6] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

Hawkins' claims of ineffective assistance of counsel are without merit and that the judgment of the Superior Court should be affirmed on the basis of its well-reasoned decision dated August 6, 2007.

(7) It is manifest on the face of Hawkins' opening brief that his appeal is without merit because the issues presented on appeal are controlled by settled Delaware law and, to the extent that judicial discretion is implicated, there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme Court Rule 25(a), the State of Delaware's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

BY THE COURT:

[signature]

Chief Justice



15-01-01
"Official Business Penalty for Private Use $300"

DONNIE RAY HAWKINS
NO:# 00095039
DELAWARE CORR, CENTER
1118 PADDOCK ROAD
SMYRNA, DELAWARE
19977




CLERK OF THE COURT
united states Distric Courthouse
Lock box 18, 844 N. King St
Wilmington, DELAWARE

Zip - 19801

U.S.M.S X-RAY




