## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONNIE RAY HAWKINS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-51-GMS |
| | ) | |
| G.R. JOHNSON, Warden, and | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF DELAWARE,[1] | ) | |
| | ) | |
| Respondents. | ) | |

---

Donnie Ray Hawkins. *Pro se* petitioner.

James T. Wakley, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.

---

## MEMORANDUM OPINION

*December 6,* 2010
Wilmington, Delaware

---

[1]Petitioner Donnie Hawkins was transferred to a different facility during the pendency of this proceeding.  Therefore, the court has substituted his present Warden, G.R. Johnson, for the original Warden, Perry Phelps.  *See* Fed. R. Civ. P. 25(d).

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254 filed by petitioner Donnie R. Hawkins ("Hawkins"). (D.I. 2.)  For the reasons discussed,

the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As described by the Delaware Supreme Court, the circumstances of Hawkins' crimes and

arrest are as follows:

> On November 3, 2004, Hawkins cursed at this wife, Carol Hawkins ("Carol"), and hit
> her.  At approximately 2:00 p.m. that day, Hawkins got out his pocketknife and held it to
> her, saying he was going to kill her and that she would not live through the day.  Carol's
> daughter, Becky, returned home from school at approximately 3:30 p.m. to find her
> mother crying.  Her mother told her not to talk to Hawkins and to run when she had the
> chance, but Becky refused to leave.  Becky later explained that Hawkins was drunk and
> "acting mean."
>
> At approximately 6:10 p.m., Matthew Collins and Joe Littleton stopped at the home to
> ask about a car advertised for sale in front of it.  Collins testified that he and Littleton
> entered the house after either Hawkins or Carol invited them in.  When Hawkins turned
> his back to them, Carol and Becky screamed, "He has a knife. He is trying to kill us."
> Collins saw Hawkins make "a swinging motion to frighten them back, but did not see a
> knife.  Collins testified that Hawkins then told them to "Get the fuck out!" to which
> Becky replied, "Don't leave us!"  The two men left the home and called 911.  As they
> were leaving, they saw Hawkins pulling Carol out of the house by her hair.  Becky
> testified that before going out to the car, Hawkins threw Carol on the ground, punched her
> and kicked her.  Hawkins then put his wife and stepdaughter in his truck and drove away.
>
> After the 911 call, the Delaware State Police intercepted Hawkins, Carol, and Becky and
> arrested Hawkins.  Trooper Justin Galloway testified at trial that Carol's lip was "busted
> open" and she was covered with scratches and defensive marks.  "[Hawins] grabbed her
> so hard that you could see the imprint of a human hand on her arm and already caused
> bruising from where he had been grabbing her, tugging on her."  A blood alcohol test of
> Hawkins returned a reading of 0.190.  Trooper Galloway explained that he searched
> Hawkins at the traffic scene but found no weapon.  When Trooper Galloway returned to
> the Hawkins' residence there appeared to be a blood-like substance on the kitchen floor
> and it also appeared that someone had fallen.  Trooper Aaron C. Blair testified that it was
> apparent that there had been a fight in the home.  At the residence, Becky gave the State

1

Police the knife Hawkins used.

*Hawkins v. State*, 905 A.2d 747 (Table), 2006 WL 1932668, at *1 (Del. July 11, 2006).

In April 2005, a Delaware Superior Court jury convicted Hawkins of two counts of

possession of a weapon during the commission of a felony ("PDWDCF"), two counts of

aggravated menacing, driving under the influence of alcohol, two counts of second degree

unlawful imprisonment, third degree assault, disorderly conduct, driving after judgment

prohibited, offensive touching, and child endangerment. *Id.* The Superior Court sentenced

Hawkins to a total of 44 years and 60 days at Level V. *State v. Hawkins*, 2010 WL 2355167, at

*1 (Del. May 26, 2010). The Delaware Supreme Court affirmed Hawkins' convictions on direct

appeal. *Hawkins*, 2006 WL 1932668.

In September 2006, Hawkins filed a *pro se* motion for state post-conviction relief

pursuant to Delaware Superior Court Rule 61 ("Rule 61 motion"). The Superior Court denied

the Rule 61 motion, and the Delaware Supreme Court affirmed that judgment. *State v. Hawkins,*

2007 WL 2296519 (Del. Super. Ct. Aug. 6, 2007); *Hawkins v. State*, 941 A.2d 1018 (Table),

2008 WL 187956 (Del. Jan. 7, 2008).

In January 2008, Hawkins timely filed his federal habeas petition in this court,[2] asserting

three ineffective assistance of counsel allegations. (D.I. 2) The State filed its answer in May

2008, asking the court to deny the petition in its entirety. Hawkins filed a response, and then he

filed two separate motions to amend his § 2254 petition; each motion contained the two

proposed amendments. (D.I. 16; D.I. 24; D.I. 27.) The court granted the amendments only to the

---

[2]The court accepts the State's conclusion that statutory tolling renders the instant petition
timely filed. (D.I. 12, at pp. 3-4.)

extent they supported the claims asserted in the original petition. (D.I. 26; D.I. 30.)

However, also in January 2008, Hawkins filed a second *pro se* Rule 61 motion in the

Delaware Superior Court. *State v. Hawkins*, 2008 WL 2406469 (Del. Super. Ct. June 9, 2008).

The Superior Court denied Hawkins' second Rule 61 motion in June 2008, eleven days after the

State filed its answer in this case. *Id.* It appears that Hawkins did not appeal the Superior

Court's denial of his second Rule 61 motion.

In August 2009, the Delaware Department of Correction discovered that Hawkins'

original sentencing order incorrectly stated that the first three years of Hawkins' sentence on each

of his two convictions for PDWDCF was mandatory. *State v. Hawkins*, 2010 WL 2355167, at *1

(Del. Super. Ct. May 26, 2010). The Superior Court held a "review of sentence hearing" on

September 4, 2009; Hawkins, his former defense counsel, and the state prosecutor were in

attendance. During the hearing, the Superior Court judge modified Hawkins' sentence by

removing the incorrect language, and sent a "modified sentence order" to Hawkins and his

former defense counsel on the same day. At defense counsel's request, the Superior Court judge

held a "re-sentencing hearing" in March 2010 to explain the modified sentence order. During the

March 2010 hearing, the judge explained that all he had done was to remove the incorrect

language from the sentences for the two weapon offenses, and that the change had no substantive

effect on any of Hawkins' sentences. Defense counsel attempted to argue for a reduction of

sentence, but was reminded by the judge of the limited purpose of the hearing. *Hawkins v. State*,

2010 WL 4365857, at *1  (Del. Nov. 3, 2010).

Some time after March 2010, Hawkins filed a third Rule 61 motion, this time alleging

that defense counsel failed to represent him effectively at the March 12, 2010 hearing. The

3

Superior Court denied the third Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See generally Hawkins*, 2010 WL 2355167; *Hawkins*, 2010 WL 4365857.

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted).  Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(internal citations omitted).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines*, 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the

petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). In determining whether the Federal law is "clearly established," the focus is on Supreme Court holdings, rather than dicta, that were clearly established at the time of the pertinent state court decision. *See Greene v. Palakovich*, 606 F.3d 85 (2010).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## III. DISCUSSION

Hawkins' petition asserts the following three claims for relief: (1) defense counsel provided ineffective assistance by failing to conduct any reasonable investigation to determine what evidence the State had or wished to present, and also by failing to file reasonable pre-trial motions; (2) defense counsel provided ineffective assistance by failing to devise a trial strategy

and consult with Hawkins; and (3) defense counsel provided ineffective assistance by failing to object to the inadmissible testimony of the police.

## A. Claims one and three are procedurally barred

Hawkins presented claims one and three to the Delaware Supreme Court in his first post-conviction appeal without having first presented the two claims to the Superior Court in his Rule 61 motion. Consequently, the Delaware Supreme Court applied Delaware Supreme Court Rule 8 and refused to consider the merits of the claims. *Hawkins,* 2008 WL 187956, at *1.

By applying the procedural bar of Rule 8, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed,* 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds. In turn, Delaware Supreme Court Rule 8 is an independent and adequate state procedural rule precluding federal habeas review. *See Campbell v. Burris,* 515 F.3d 172, 182 (3d Cir. 2008). Therefore, the court cannot review the merits of the instant claims absent a showing of cause and prejudice, or a miscarriage of justice.

In this proceeding, Hawkins has not asserted, and the court cannot discern, any cause for his default of claims one and three.[3] Given Hawkins' failure to establish cause, the court will not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine does not excuse Hawkins' default because he has not provided any new reliable evidence of his actual innocence. Accordingly, the court will dismiss claims one

---

[3]Hawkins' subsequent presentation of these two claims to the Superior Court in his second Rule 61 motion did not "cure" his original default of these two claims; Hawkins failed to appeal the denial of his second Rule 61 motion to the Delaware Supreme Court, which effectuated yet another "procedural default" of claims one and three.

and three as procedurally barred.

**B. Claim two: counsel's failure to devise a trial strategy and consult with Hawkins**

Hawkins presented claim two to the Superior Court in his Rule 61 motion, as well as to the Delaware Supreme Court on post-conviction appeal. The Superior Court denied the claim as meritless, and the Delaware Supreme Court affirmed that decision after also independently determining that the claim lacked merit. Given the Delaware Supreme Court's consideration of Hawkins' complaint, the court can only grant habeas relief if the Delaware Supreme Court's denial of the instant ineffective assistance of counsel claim was contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding

and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Here, both the Superior Court and the Delaware Supreme Court identified *Strickland* as the proper standard and analyzed claim two within its framework. Therefore, the Delaware Supreme Court's decision was not contrary to *Strickland*. *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The court's inquiry is not over, however, because it must also determine whether the Delaware Supreme Court reasonably applied *Strickland* in denying claim two. In this case, defense counsel filed an affidavit in response to Hawkins' allegations, detailing her trial preparation and coordination with Hawkins as follows:

> In the course of planning and preparing for trial, affiant has documented numerous meetings, phone calls, and communications with this client about his case. I had an initial video meeting with Hawkins about his charges and case within twenty days of his arrest, on November 23, 2004, had four or five more meetings at SCI with him prior to trial plus meetings in court during two case reviews, answered phone calls, as availability in the office allowed, and communicated by mail, transmitting case information multiple times. In the course of my representation, I accumulated a file of well over 320 pages of communications and documents sent to me by this client, all of which I reviewed and incorporated, as deemed appropriate, into trial preparation.
>
> \*       \*       \*
>
> As regards "trial strategy," strategic and tactical decisions are within the purview of the trial attorney. However, Hawkins was very active and involved in providing potential witness information, and providing facts and background relevant to the State's witnesses and to the alleged incident that led to his charges.

(D.I. 12, at pp. 8-9) The Delaware Superior Court reviewed counsel's response in context with Hawkins' allegations, and determined that counsel's performance with respect to Hawkins' complaint was neither deficient nor prejudicial to Hawkins' case. The Delaware Supreme Court

10

affirmed that decision, specifically holding that there was no evidence that any error on the part of counsel resulted in prejudice to Hawkins.

By rejecting Hawkins' allegations regarding counsel's failure to devise a trial strategy and failure to consult with him, the Delaware State Courts implicitly found defense counsel's account of her preparation, consultation, and development of trial strategy to be more credible than Hawkins' account. In this proceeding, Hawkins asserts that he "disagrees [with the Superior Court's conclusion]," and he "states that these major inconsistencies [in the testimony of certain witnesses], prior out-of-court statements, and different versions of the same account by numerous witnesses cumulatively would have presented the jury with a different story and they would not have convicted. Counsel was not prepared and made horrible trial strategy errors with respect to the knife and blood issues." (D.I. 24-1, at p. 11) Contrary to Hawkins' belief, however, his unsupported and conclusory statements do not amount to the "clear and convincing evidence" needed to rebut the statutory presumption of correctness the court must afford to the Delaware State Courts' factual finding. Therefore, the court accepts as correct the Delaware Supreme Court's implicit factual finding that counsel devised a trial strategy and consulted with Hawkins. *See* 28 U.S.C. § 2254(e)(1).

In turn, viewing the entire record in conjunction with the Delaware Supreme Court's factual finding, the court concludes that the Delaware Supreme Court's rejection of the instant ineffective assistance of counsel argument was based on a reasonable determination of the facts presented to it. *See* 28 U.S.C. 2254(d)(2). Given this determination, the court further concludes that the Delaware Supreme Court's decision involved a reasonable application of *Strickland.* Accordingly, the court will deny claim two for failing to satisfy the requirements of § 2254(d).

11

## IV.  CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2008).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court concludes that Hawkins' petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable.  Consequently, the court declines to issue a certificate of appealability.

## V.  CONCLUSION

For the reasons stated, Hawkins' petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied.  An appropriate order shall issue.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

DONNIE RAY HAWKINS,    )
                      )
       Petitioner,     )
                      )
v.                   )   Civil Action No. 08-51-GMS
                      )
G.R. JOHNSON, Warden, and    )
ATTORNEY GENERAL OF     )
THE STATE OF DELAWARE,    )
                      )
       Respondents.    )

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Petitioner Donnie Ray Hawkins' petition for the writ of habeas corpus filed pursuant

to 28 U.S.C § 2254 is **DISMISSED**, and the relief requested therein is **DENIED.**  (D.I. 2.)

2. The court declines to issue a certificate of appealability due to Hawkins' failure to

satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

Dated:  Dec  6 , 2010

_____
CHIEF, UNITED STATES DISTRICT JUDGE